IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

EL PASO NATURAL GAS COMPANY,

Defendant.

Civil Action No.

## COMPLAINT

Plaintiff, the United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the Pipeline and Hazardous Materials Safety Administration of the United States Department of Transportation ("DOT"), files this complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought against El Paso Natural Gas Company ("EPNG" or "Defendant") for injunctive relief and civil penalties for violations of the Federal pipeline safety laws, 49 U.S.C. § 60101 et seq., and the applicable implementing regulations at 49 C.F.R. Part 192, et. seq. The violations alleged in the Complaint occurred at EPNG pipeline facilities located in New Mexico and Texas.

2. The First Claim for Relief alleges that Defendant failed to employ personnel qualified in corrosion control methods as required by 49 C.F.R. § 192.453. The Second and Third Claims allege that Defendant was transporting corrosive gas on its pipelines and failed to

investigate and mitigate internal corrosion in violation of 49 C.F.R. § 192.475, and failed to use coupons or other suitable means of monitoring its pipelines to determine the effectiveness of steps taken to minimize internal corrosion in violation of 49 C.F.R. § 192.477.

JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 49 U.S.C. § 60120(a)(1) and 28 U.S.C. §§ 1331, 1345, and 1355.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), because Defendant's natural gas pipeline is located in this district and the violations alleged herein occurred in this judicial district.

AUTHORITY

5. Authority to bring this action is vested in the United States Department of Justice under 49 U.S.C. § 60120(a)(1), and 28 U.S.C. §§ 516 and 519.

DEFENDANT

6. EPNG is a corporation organized and existing under the laws of the State of Delaware.

7. EPNG is a wholly owned subsidiary of El Paso Corporation.

8. El Paso Corporation sells natural gas and related energy products. El Paso Corporation owns North America's largest natural gas pipeline system and is one of North America's largest independent natural gas producers.

9. EPNG's interstate natural gas pipeline system extends from the San Juan, Permian, and Anadarko Basins to markets in California, Arizona, New Mexico, Oklahoma, Texas, and northern Mexico. The EPNG system consists of over 10,000 miles of pipeline.

10. The EPNG pipeline system transports gas through pipelines it owns and operates in the United States.

11. EPNG is subject to the regulations for the transportation of natural gas and other gas by pipeline in 49 C.F.R. Part 192.

12. EPNG is a "person" as defined in 49 U.S.C. § 60101 and 49 C.F.R. § 192.3.

STATUTORY AND REGULATORY BACKGROUND

13. Gas pipelines were regulated for safety under the Natural Gas Pipeline Safety Act of 1968, former 49 U.S.C. app. § 1671 et seq. In 1994, Public Law 103-272 repealed this and codified its provisions without substantive change at 49 U.S.C. Sec. 60101 et seq. The Federal pipeline safety laws, codified at 49 U.S.C. § 60101 et seq., were amended by the Accountable Pipeline Safety and Partnership Act of 1996. The Federal pipeline safety laws were further amended by the Pipeline Safety Improvement Act of 2002.

14. The purpose of the Federal pipeline safety laws "is to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 60102 (a) (1)

15. Pursuant to 49 U.S.C § 60118 (a):

> A person owning or operating a pipeline facility shall: comply with applicable safety standards prescribed under this chapter, except as provided in this section or in section 60126; prepare and carry out a plan for inspection and maintenance required under section 60108(a) and (b) of this title; allow access to or copying of records, make reports and provide information, and allow entry or inspection required under section 60117(a) to (d) of this title; and conduct a risk analysis, and adopt and implement an integrity management program, for pipeline facilities as required under section 60109(c).

16. Pursuant to 49 U.S.C. § 60102 (a) (2):

> The Secretary shall prescribe minimum safety standards for pipeline facilities. The standards apply to owners and operators of pipeline facilities; may apply to the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities; and shall include a requirement that all individuals who operate and maintain pipeline facilities shall be qualified to operate and maintain the pipeline facilities.

17. Pursuant to these statutory authorities, DOT promulgated Pipeline Safety Regulations. Those regulations are set forth at Title 49, Parts 190-195 and Part 199. Part 192 provides minimum federal safety standards for the transportation of natural and other gas by pipeline.

18. Pursuant to 49 C.F.R. § 192.3, "pipeline" is defined as "all parts of those physical facilities through which gas moves in transportation, including pipe, valves, and other appurtenance attached to pipe, compressor units, metering stations, regulator stations, delivery stations, holders, and fabricated assemblies."

19. Pursuant to 49 C.F.R. § 192.3, "pipeline facility" is defined as "new and existing pipelines, right-of-way, and any equipment, facility, or building used in the transportation of gas or in the treatment of gas during the course of transportation."

20. Pursuant to 49 U.S.C. § 60120, the Secretary of Transportation may bring a civil action in an appropriate district court of the United States to enforce this chapter, including section 60112, or a regulation prescribed or order issued under this chapter. The court may award appropriate relief, including a temporary or permanent injunction, punitive damages, and assessment of civil penalties, considering the same factors as prescribed for the Secretary in an administrative case under section 60122.

FIRST CLAIM FOR RELIEF

21. The allegations in Paragraphs 1 through 20 are realleged and incorporated herein by reference.

22. The regulation at 49 C.F.R. § 192.605(a) requires that the "operator shall prepare and follow for each pipeline, a manual of written procedures for conducting operations and maintenance activities and for emergency response."

23. The regulation at 49 C.F.R. § 192.605(b)(2) states that the manual required by 49 C.F.R. § 192.605(a) must include procedures for "[c]ontrolling corrosion in accordance with operation and maintenance requirements of subpart I of this part" to provide safety during maintenance and operations.

24. Part 192 provides the minimum safety standards for the transportation of natural and other gas by pipeline. Subpart I of Part 192 states the requirements for corrosion control.

25. The regulation at 49 C.F.R. § 192.453 requires that:

> [the] corrosion control procedures required by § 192.605(b)(2) including those for the design, installation, operation and maintenance of cathodic protection systems, must be carried out by, or under the direction of, a person qualified in pipeline corrosion control methods.

26. Pursuant to 49 U.S.C. § 60102 (a)(3), qualifications applicable to a person who operates and maintains a pipeline facility shall address the "ability to recognize and react appropriately" to abnormal operating conditions that may indicate a dangerous situation or a condition exceeding design limits.

27. EPNG maintained a manual titled Operation and Maintenance Procedures which was periodically reviewed and updated as required by 49 C.F.R. § 192.605(a).

28. EPNG's Operation and Maintenance Procedures, dated May 15, 2000 ("EPNG's May 2000 O&M Manual") required that "[g]as and liquids transported shall be tested to determine if they are corrosive, and require further steps to minimize the possibility of internal corrosion."

29. Section 308.1 of EPNG's May 2000 O&M Manual stated that "Corrosion Control Procedures must be performed by persons qualified by company operator qualification programs. Personnel not qualified must be observed and directed by a qualified person."

30. The determination as to whether gas and liquids transported were corrosive was not made by persons qualified in pipeline corrosion control methods or under the direction of a person qualified in pipeline corrosion control methods as required by 49 C.F.R. § 192.453.

31. EPNG's corrosion control procedures were not carried out by, or under the direction of, a person qualified in pipeline corrosion control methods.

<u>SECOND CLAIM FOR RELIEF</u>

32. The allegations in Paragraphs 1 through 31 are realleged and incorporated herein by reference.

33. The regulation at 49 C.F.R. § 192.475(a) states: "[c]orrosive gas may not be transported by pipeline, unless the corrosive effect of the gas on the pipeline has been investigated and steps have been taken to minimize internal corrosion."

34. At all relevant times, EPNG has owned and operated Pipeline 1103, a 30-inch diameter natural gas transmission pipeline, used to transport natural gas from the Permian Basin near Odessa, Texas to markets in California.

35. Pipeline 1103 is buried along most of its course. Near Carlsbad, New Mexico, the pipeline crosses the Pecos River, and, at the crossing, the pipeline runs above-ground, suspended for the river crossing by a bridge erected and owned by EPNG. After the river crossing, the pipeline continues underground.

36. On August 19, 2000, Pipeline 1103 ruptured. The rupture occurred a short distance past the location where the pipeline resumes its underground course after crossing the Pecos River.

37. The August 19, 2000 rupture in Pipeline 1103 released natural gas which ignited, causing an explosion which killed twelve people camping under the bridge that supported the pipeline across the Pecos River.

38. After the explosion, investigations revealed severe internal corrosion at various locations in Pipeline 1103, including but not limited to the location where the rupture occurred on August 19, 2000.

39. The force of the rupture and ignition of the gas created a fifty-one foot wide crater extending approximately 113 feet along Pipeline 1103.

40. A forty-nine foot section of Pipeline 1103 was ejected from the crater in three pieces measuring approximately three feet, twenty feet and twenty-six feet in length.

41. All three pieces of the pipe showed evidence of internal corrosion. The most severe corrosion was found along the bottom of the pipe with the most severely corroded area reducing the original pipe wall thickness by seventy-two percent.

42. At all relevant times, EPNG has owned and operated Pipeline 1107 (sometimes referred to as the "Upton County Line to Pecos County Plymouth Line"), a 1.467 mile long

20 inch diameter pipeline used to transport natural gas from the NuStar Plant, a cryogenic gas processing facility in Texas, to Benedum Junction in Texas. At Benedum Junction, the natural gas from Pipeline 1107 flows into other interconnected pipelines.

43. After the rupture of Pipeline 1103, EPNG inspected Pipeline 1107 by using an in line inspection tool on or about November 18, 2000.

44. Results from the above referenced inspection verified that internal corrosion was present in Pipeline 1107.

45. Based on the results of the inspection, five sections of Pipeline 1107 were replaced due to internal metal loss indications.

46. EPNG transported corrosive gas in its pipeline system, including in Pipelines 1103 and 1107.

47. EPNG violated 49 C.F.R. § 192.475 by failing to investigate adequately the corrosive effect of the gas on its pipeline system and to take adequate steps to minimize internal corrosion in its pipeline system, including Pipelines 1103 and 1107.

48. Unless this Court orders EPNG to comply with 49 C.F.R. § 192.475, EPNG will continue to transport corrosive gas in its pipeline system without adequately investigating the corrosive effect of the gas on its pipeline system and taking adequate steps to minimize internal corrosion.

## THIRD CLAIM FOR RELIEF

49. The allegations in Paragraphs 1 through 48 are realleged and incorporated herein by reference.

50. The monitoring regulation at 49 C.F.R. § 192.477 requires that:

> [i]f corrosive gas is being transported, coupons or other suitable means must be used to determine the effectivenesss of the steps taken to minimize internal corrosion. Each coupon or other means of monitoring internal corrosion must be checked two times each calendar year, but with intervals not exceeding 7 ½ months.

51. EPNG transported corrosive gas in its pipeline system, including Pipelines 1103 and 1107, and failed to use coupons or other suitable means to determine the effectiveness of steps taken to minimize internal corrosion.

52. EPNG's failure to use coupons or other suitable means to determine the effectiveness of steps taken to minimize internal corrosion violated 49 C.F.R. § 192.477.

53. Unless this Court orders EPNG to comply with 49 C.F.R. § 192.477, EPNG will continue to fail to use coupons or other suitable means to monitor its pipelines and determine the effectiveness of steps taken to minimize internal corrosion.

PRAYER FOR RELIEF

Plaintiff, the United States, respectfully requests from this Court the following relief:

1. For such injunctive relief as necessary to compel Defendant to take appropriate actions to ensure Defendant's continued compliance with the Pipeline Safety Act and its implementing regulations;

2. Assess civil penalties against Defendant in an amount appropriate to the nature, circumstances, gravity of the violation, including adverse impact to the environment; the violator's degree of culpability; good faith in attempting to comply with regulations; the economic benefit gained from the violations without any reduction because of subsequent damages; and other matters that justice requires; and

3. Award the United States its costs of suit herein and such other additional relief as the Court may deem appropriate.

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

/s/ Patricia A. Mckenna
PATRICIA A. MCKENNA
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: 202/616-6517
Facsimile: 202/616-2427
Email: patricia.mckenna@usdoj.gov

LARRY GOMEZ
Acting United States Attorney

JAN ELIZABETH MITCHELL
Assistant U.S. Attorney
District of New Mexico
P.O. Box 607
Albuquerque, New Mexico 87103
505/346-7274

**OF COUNSEL:**
SHERRI PAPPAS
Deputy Chief Counsel
Office of Chief Counsel
Pipeline and Hazardous Material Safety Administration
1200 New Jersey Avenue, SE
Sector E26
Washington, DC 20590
(202) 366-4400